[No. 44362. En Banc. January 7, 1977.]

BRUDIJEAN FUQUA, *Plaintiff*, THE STATE OF WASHINGTON, *Respondent*, v. RAYMOND L. FUQUA, *Defendant*, RONALD W. MEIER, *Appellant*.

KAREN ELIZABETH KAUR, *Plaintiff*, THE STATE OF WASHINGTON, *Respondent*, v. CHARANJIT SINGH CHAWLA, *Defendant*, RONALD W. MEIER, *Appellant*.

*Ronald W. Meier,* pro se.

*Christopher T. Bayley, Prosecuting Attorney,* and *Kenneth A. Lee, Senior Deputy,* for respondent.

UTTER, J.—Ronald Meier, an attorney and appellant herein, appeals from an order of the Superior Court quashing liens for his attorney's fees filed in each of the two cases which are the subject of this appeal.

Appellant secured a decree of divorce for Mrs. Brudijean Fuqua on July 17, 1963. The decree awarded her custody of the parties' four minor children and directed Mr. Fuqua to pay Mrs. Fuqua $80 per month per child for their support and $80 per month alimony. A substantial arrearage accumulated and Mrs. Fuqua retained other counsel who instituted contempt proceedings against Mr. Fuqua. Both parties then petitioned for modification of the original decree. At this point, appellant once again was retained by Mrs. Fuqua. The court, in an order entered August 27, 1975, fixed the amount of combined arrearages for alimony and child support at $5,080 plus interest, eliminated the alimony provision and established support payments of

$100 per child for the unemancipated children. Mr. Fuqua was also ordered to pay Mrs. Fuqua $500 "to apply upon her attorney's fees." The arrearages were subsequently paid into the registry of the court. Appellant filed a notice of attorney's lien in the Fuqua case in the amount of $3,465.43 "to the extent of unpaid alimony."

In *Kaur v. Chawla,* 11 Wn. App. 362, 522 P.2d 1198 (1974), appellant successfully represented Karen Kaur in a private action to establish paternity of the child born to her and to obtain support for that child. Paternity was established and judgment for $2,000 past support and $75 per month current support was entered, to be paid into the registry of the court. On the same date this judgment was entered, appellant filed a notice of attorney's lien in the *Kaur* case for $1,000 against the judgment for past support and $37.50 per month as applied to current support payments.

On October 22, 1975, the King County Prosecuting Attorney, on behalf of the State, filed a motion to quash the lien in each case. Thereafter the State was made an additional party plaintiff and appellant an additional party defendant in each case. These consolidated cases present three issues for our consideration: Does a prosecuting attorney have authority to appear on behalf of the State for the purpose of resisting action which might violate the right of children to support, absent a court order or direct request by one of the named parties authorizing him to do so; was the prosecutor's intervention in these particular cases properly accomplished; and was the order of the trial court, directing that these liens be quashed, a proper decision on the merits.

The authority of the prosecuting attorney to appear in actions which present issues concerning county officials and their operation of county departments has been broadly construed in this state.

> In this state the prosecuting attorney is also the county attorney, and the relations of that officer to the county may be such as possibly require him to appear in behalf

of the county in some instances, even if the specific duty may not be particularly and expressly prescribed by statute. If so, the duty arises out of the obligations he has assumed as an officer of the county to discharge the general functions of an attorney in [its] behalf.

*Bates v. School Dist. 10,* 45 Wash. 498, 501–02, 88 P. 944 (1907); *In re Lewis,* 51 Wn.2d 193, 316 P.2d 907 (1957).

Several statutes relate to the duties of the prosecuting attorney. His general duties are described in RCW 36.27.020.[1] He has, as well, been given express authority to represent the broad interest of the State in cases involving support of minor children.[2] Where, as here, support or maintenance funds are paid to the clerk of the Superior Court, RCW 26.09.120(2)(c) provides:

The clerk of the court shall, if the party fails to make required payment, send by first class mail notice of the arrearage to the obligor. If payment of the sum due is not made to the clerk of the court within ten days after sending notice, the clerk of the court shall certify the amount due to the prosecuting attorney.

This provision directly involves the clerk with the prosecuting attorney when funds ordered to be paid for support become delinquent. In addition, express statutory authority is found compelling the prosecuting attorney to act as legal

---

[1]Those duties include:

"(2) Be legal advisor to all county and precinct officers and school directors in all matters relating to their official business, and when required he shall draw up all instruments of an official nature for the use of said officers;

"(3) Appear for and represent the state, county, and all school districts subject to the supervisory control and direction of the attorney general in all criminal and civil proceedings in which the state or his county or any school district in his county may be a party;

"(4) Prosecute all criminal and civil actions in which the state or his county may be a party, defend all suits brought against the state or his county, and prosecute actions upon forfeited recognizances and bonds and actions for the recovery of debts, fines, penalties, and forfeitures accruing to the state or his county;" RCW 36.27.020(2), (3), and (4).

[2]Under those statutes, the prosecuting attorney is deemed the proper representative of the state in matters pertaining to criminal nonsupport, RCW 26.20; uniform reciprocal support actions, RCW 26.21; and filiation proceedings, RCW 26.26.

advisor to all county officers, RCW 36.27.020(2) and (3), and to appear and represent the State and county in all civil actions where they "may be a party."

■ Our case law and statutes support the conclusion that either the clerk of the court or the State may appear through its legal representatives as an interested party in legal actions involving the payment of support monies into the registry of the court. It is proper for the prosecutor, as counsel for an interested party, to appear and represent the interests of the clerk in seeking a lawful distribution of funds paid into the clerk's office. Moreover, our court has traditionally taken a broad view of the State's interest in dissolutions in general, and in particular those involving the welfare of minor children. We have stated on several occasions that the State is an "interested party" in all such proceedings.

> [D]ivorce actions and proceedings ancillary thereto are not adversary in the customary sense, for the state is an interested party. In effect, such proceedings involve three parties: the plaintiff, the defendant, and the state. Where minor children are involved, the state's interest is that, in so far as is possible, provision shall be made for their support, education, and training, to the end that they may grow up to be worthy and useful citizens.

*Corson v. Corson*, 46 Wn.2d 611, 615, 283 P.2d 673 (1955). *See State v. Bowen*, 80 Wn.2d 808, 498 P.2d 877 (1972); *In re Lewis, supra*. Therefore, although not expressly authorized by specific language of any statute to appear in this precise form of action, we conclude that the prosecutor had standing as the proper representative of both the State and its officer, the county clerk, to move to quash these liens.[3]

---

[3]RCW 26.08.080, which authorized the appearance of the prosecutor in default and uncontested divorces, as well as those contested divorces where specific requests for his appearance were made, was repealed by Laws of 1973, 1st Ex. Sess., ch. 157, § 30. Appellant contends that this legislative action precludes the prosecutor's appearance in these cases. However, that statute neither expressly authorized the action of the prosecutor here nor do we read its repeal as precluding the prosecutor from exercising powers based upon other statutes and our case law.

 Appellant's contention that the prosecutor's intervention was not accomplished in compliance with CR 24 is without merit. As the representative of a real party in interest, the prosecuting attorney was entitled to intervene as a matter of right. CR 24(a)(2). Any procedural objection appellant might have had to the action of the prosecutor was waived when he failed to object, on procedural grounds, to the entry of the order adding additional parties to the actions. Generally, issues not raised before the trial court will not be considered on appeal. Appellant's other contentions with regard to CR 24 do not fall within the limited exceptions to this rule. *In re Richard,* 75 Wn.2d 208, 449 P.2d 809 (1969). Upon entry of the order adding additional parties, the trial court had before it all parties necessary to a determination of the validity of appellant's liens and thus had jurisdiction to make a determination on the merits. *See State ex rel. Arthur v. Superior Court,* 58 Wash. 97, 107 P. 876 (1910).

Appellant, in his argument for reversal of the order quashing these liens, cites the broad language of RCW 60.40.010, which provides,

> An attorney has a lien for his compensation, whether specially agreed upon or implied, as hereinafter provided: . . . (4) upon a judgment to the extent of the value of any services performed by him in the action, or if the services were rendered under a special agreement, for the sum due under such agreement, from the time of filing notice of such lien or claim with the clerk of the court in which such judgment is entered, which notice must be filed with the papers in the action in which such judgment was rendered, and an entry made in the execution docket, showing name of claimant, amount claimed and date of filing notice.

We have not previously had occasion to consider whether such a lien may be filed against a judgment for child support or separate maintenance. A child's custodian receives support money as a trustee and not in his or her own right. *Ditmar v. Ditmar,* 48 Wn.2d 373, 293 P.2d 759 (1956); *Roberts v. Roberts,* 69 Wn.2d 863, 420 P.2d 864 (1966). The

trial court concluded that the compensation owed appellant was the debt of the custodian and not the children and therefore refused to allow assertion of a lien for that debt against funds paid into the court for child support. It held that funds in the possession of the clerk or the custodian of the children were held by them solely as trustees. The trial court further found the combined lump–sum award for alimony and child support granted in *Fuqua* was not readily severable and, because it involved commingled child support and alimony, declined to allow the assertion of a lien against any portion of that sum.

A majority of the courts of other jurisdictions have declared attorney's liens filed against funds representing either child support or alimony to be invalid. Generally speaking, these decisions have been based upon considerations of public policy. *See, e.g., Hubbard v. Ellithorpe,* 135 Iowa 259, 112 N.W. 796 (1907); *Indell v. Tabor,* 185 N.Y.S. 873 (Sup. Ct. 1920); *Johnson v. Gerald,* 216 Ala. 581, 113 So. 447, 59 A.L.R. 348 (1927); *Bucknam v. Bucknam,* 347 Mo. 1039, 151 S.W.2d 1097 (1941). A few courts have allowed the imposition of a lien where lump–sum alimony has been awarded in lieu of a property division, *McDonald v. Johnson,* 229 Minn. 119, 38 N.W.2d 196 (1949); *Hubbard v. Ellithorpe, supra,* or where the custodian and her attorney entered into a contract allowing an attorney's fee to be paid out of the funds recovered. *Costigan v. Stewart,* 76 Kan. 353, 91 P. 83 (1907). Neither of the aforementioned exceptions are directly relevant to the facts of this case. Further, this court has expressly held a contingent fee contract in a divorce action to be void as a matter of public policy, stating:

> In fixing the amount and time of payment of support money and alimony, the court is entitled to have all the facts which would influence its decision. It is also entitled to be free from side agreements which would frustrate the court's effort to make suitable provision for the wife without undue burden on the husband.

*In re Smith,* 42 Wn.2d 188, 196–97, 254 P.2d 464 (1953).

A substantially similar concern has been expressed by those courts which have declared liens on child support or alimony to be void as a matter of public policy. In *Sanner v. Sanner,* 46 S.W.2d 936 (Mo. Ct. App. 1932), the Missouri court considered and adopted the reasoning of the New York courts, quoting from the decision in *Mooney v. Mooney,* 29 Misc. 707, 62 N.Y.S. 769 (1899), as follows: "It [the award of alimony] is intended for the support of the party to whom it is awarded, its amount is fixed with reference to her necessities, and the courts will not countenance its appropriation to any other purpose." *Sanner v. Sanner, supra* at 938.

▆ A few courts have allowed such liens, rejecting both the policy arguments relied upon in other jurisdictions as well as the "trust theory" relied upon by the trial court here. *See Taylor v. Stull,* 79 Neb. 295, 112 N.W. 577 (1907); *State ex rel. Showen v. O'Brien,* 89 W. Va. 634, 109 S.E. 830 (1921); *Hampton v. Hampton,* 85 Utah 338, 39 P.2d 703 (1935). However, to allow an attorney's lien to be asserted against child support would necessarily result in counsel for the custodian taking from the children involved, monies which the court has determined to be necessary to assure their adequate support. It is impractical to assume that the trial court can consider possible liability for attorney's fees in ascertaining a support figure. This is precisely the sort of consideration which led to our holding in *Smith.* If the assertion of liens such as these became commonplace, the court's function in providing for the adequate support of minor children, the innocent parties to these actions, would be wholly frustrated. "Equity, which creates the fund, will not suffer its purpose to be nullified." *Turner v. Woolworth,* 221 N.Y. 425, 430, 117 N.E. 814 (1917). We therefore hold that, as a matter of public policy, statutory attorney's liens may not be asserted against monies which represent payments for child support. Any effort to assert such a lien is void, whether it be against funds in the hands of the clerk, the lawful custodian of the children, or an attorney.

It follows that the trial court's determination to quash these liens, insofar as they involve child support monies, must be affirmed. However, it should be noted that we do so not upon the basis of the "trust theory" employed by the trial court, but rather upon the broad grounds of public policy relied upon in the *Smith, Sanner,* and *Indell* cases.[4]

Appellant has asserted that his liens are valid at least to the extent that they involve back support—with this contention we cannot agree. We see no reason to allow assertion of a lien against support monies which are, after long delay, made available to children who have been deprived of the benefit of adequate support on a regular basis. The fact that such children may have managed to get along, though deprived of adequate support for some time, certainly does not compel the conclusion that those support monies are in any way less important to the welfare of the children involved than they were at the time awarded. Indeed, it is quite likely that the back support would be needed to satisfy indebtedness incurred by the custodian on behalf of the family during the period in which the family was without adequate support.

Although the conclusions reached in many of the cases relied upon here apply with equal force to both child support and separate maintenance, our decision is limited only to the question before us, the validity of an attorney's lien asserted against funds representing child support payments. The *Fuqua* case did involve a lien asserted against money paid into the court on a judgment for both back alimony and child support. However, the trial court concluded that those funds were commingled and not readily severable. Once having determined that an attorney's lien could

---

[4]The trust approach is complicated by the well-established doctrine that the interest of a beneficiary in a trust for support is reachable by a creditor for "necessaries." *See* Restatement (Second) of Trusts § 157(b) (1959). In many instances it could well be concluded that the employment of an attorney was necessary to preserve and perhaps to create the corpus of a "trust" of this nature, with the result that a lien against this trust might be upheld. *See Taylor v. Stull, supra.* Thus, a trust analysis might often lead to a result contrary to the overriding policy considerations with which we are most concerned.

not be asserted against child support, the trial court concluded that the lien in question, even if purportedly limited in its application to maintenance alone, could not properly be asserted against any portion of the commingled fund. We find the trial court's conclusion that this fund was not readily severable to be amply supported by the record. We also agree that an attorney's lien may not be asserted against any portion of funds paid in satisfaction of a judgment which includes commingled child support. *Wenatchee Fed. Sav. & Loan Ass'n v. Mission Ridge Estates,* 80 Wn.2d 749, 498 P.2d 841 (1972).

The order of the trial court quashing the appellant's lien in each of these cases is affirmed.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.